IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHRISTINA ERLANDSEN, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> MARTIN O'MALLEY, § <br> *Commissioner of Social Security*, § <br> § <br> Defendant. § <br> § | Civil Action No. 4:23-cv-83-ALM-KPJ |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Christina Erlandsen ("Ms. Erlandsen") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her concurrent claims for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Having considered the briefs submitted by the parties and the administrative record, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

## I.  APPLICABLE LAW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

**B.  Standard of Review**

The standard of review in a social security appeal is whether the Commissioner's final decision[2] "is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied, the Commissioner's decision stands, and the claimant is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)) (internal quotation marks omitted). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)) (internal quotation marks omitted). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (per curiam)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Ms. Erlandsen was born in 1978, obtained a bachelor's degree in psychology, and worked as a registered nurse at the time of her applications.[3] *See* Tr. 41, 268, 272–73. On February 24, 2020, Ms. Erlandsen filed concurrent applications for SSI and DIB, alleging disability since September 1, 2019,[4] due to thoracic outlet syndrome as well as chronic pain and peripheral neuropathy derived therefrom; mood disorder/bipolar disorder; depression; restless legs syndrome; attention deficit hyperactivity disorder ("ADHD"); and generalized anxiety disorder ("GAD"). *See* Tr. 140, 268, 272. The Social Security Administration (the "SSA") denied Ms. Erlandsen's claims initially on May 4, 2020, and upon reconsideration on July 8, 2021. *See* Tr. 87–88, 135–36. Thereafter, Ms. Erlandsen filed a written request for a hearing. *See* Tr. 203–05. On February 24, 2022, Administrative Law Judge Mark Kim (the "ALJ") held a hearing. *See* Tr. 31–62. The hearing was attended by Ms. Erlandsen, her attorney, and a vocational expert (the "VE"). Tr. 31.

On July 25, 2022, the ALJ issued an unfavorable decision denying Ms. Erlandsen's claims. *See* Tr. 140–160. In his decision, the ALJ found Ms. Erlandsen met the insured status requirements of the Social Security Act (the "Act") through December 31, 2021. Tr. 143. At step one, the ALJ found that Ms. Erlandsen engaged in substantial gainful activity from January 1, 2020 to March 31, 2020. Tr. 143. However, the ALJ found that Ms. Erlandsen did not engage in substantial gainful activity for a continuous period of twelve months and, therefore, proceeded to step two of the sequential evaluation process. *See* Tr. 144. At step two, the ALJ found that Ms. Erlandsen had the following severe impairments: headaches; thoracic outlet syndrome; cervical spondylosis;

---

[3] Documents 5-1 through 5-10 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document and page numbers.

[4] Ms. Erlandsen later amended her alleged onset date ("AOD") to December 31, 2019. Tr. 36, 140.

4

persistent genital arousal disorder ("PGAD"); and GAD. Tr. 144. At step three, the ALJ found that none of Ms. Erlandsen's impairments, alone or in combination, met or medically equaled a Listing. Tr. 149. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Erlandsen's RFC. *See* Tr. 152–58. The ALJ found that Ms. Erlandsen had the RFC to:

> perform light work . . . except the claimant can never climb ladders, ropes, or scaffolds, but can occasionally climb stairs. The claimant can never crawl, but can occasionally stoop, kneel, and crouch. The claimant can perform frequent handling, fingering, and feeling objects with the bilateral upper extremities. The claimant must avoid unprotected heights. From a mental standpoint, the claimant can perform simple, routine tasks with a specific vocational preparation . . . of 2 or less; and work involving only occasional and simple changes.

Tr. 152. At step four, the ALJ found that Ms. Erlandsen's RFC made her "unable to perform any past relevant work" and, therefore, proceeded to step five. Tr. 158. At step five, the ALJ determined that, "[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 159. Relying on the VE's testimony, the ALJ determined that Ms. Erlandsen could perform occupations such as office helper, office mailroom clerk, and collator. *See* Tr. 159. Accordingly, the ALJ concluded that Ms. Erlandsen was not disabled within the meaning of the Act. *See* Tr. 160.

Ms. Erlandsen requested that the Appeals Council review the ALJ's unfavorable decision. *See* Tr. 243–245. On November 28, 2022, the Appeals Council denied the request for review. *See* Tr. 1–4. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Erlandsen filed her appeal to this Court on January 31, 2023. *See* Dkt. 1.

### III. ANALYSIS

On appeal, Ms. Erlandsen raises several arguments, including that the ALJ failed to adequately discuss the persuasiveness of the opinions of Dr. Ahn and Dr. Ayoade. *See, e.g.*,

5

Dkt. 12 at 20. Specifically, Ms. Erlandsen contends that the ALJ's perfunctory analysis precludes meaningful appellate review. *See id.* The Commissioner responds that the ALJ's persuasiveness discussion satisfied his statutory mandate. *See* Dkt. 14 at 6–7. According to the Commissioner, "the ALJ noted how persuasive he found each opinion; he further noted that neither opinion referenced or was supported by records or treatment notes from each respective physician (supportability) and neither opinion was consistent with the remainder of the record (consistency), which the ALJ had earlier discussed in great detail." *Id.* at 6. The Court agrees with Ms. Erlandsen and concludes that the decision of the Commissioner should be reversed.

**A.    Medical Opinion Evidence**

Under the revised rules for the evaluation of medical opinion evidence,[5] the ALJ must articulate the persuasiveness of each medical opinion in the record. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Persuasiveness is based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors supporting or detracting from the persuasiveness of the opinion. *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The "most important factors," and the only factors the ALJ *must* discuss, are supportability and consistency. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

Supportability and consistency are defined as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be.

(2) Consistency. The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.

---

[5] The revised rules apply to claims filed on or after March 27, 2017, and no longer permit deference to be given to any medical opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

*Id.* §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). Therefore, supportability refers to the relationship between the conclusions drawn by the medical opinion and the evidence used to support those conclusions, while consistency refers to "how well a medical source is supported, or not supported, by the entire record." *See, e.g.*, *Henderson-Washington v. Comm'r of Soc. Sec.*, No. 23-cv-6, 2023 WL 9005588, at *3 (N.D. Tex. Dec. 28, 2023) (quoting *Heleodoro C. v. Comm'r, Soc. Sec. Admin.*, No. 20-cv-3520, 2022 WL 4359148, at *3 (N.D. Tex. July 20, 2022), *R. & R. adopted sub nom. Castro v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4360555 (N.D. Tex. Sept. 19, 2022)) (internal quotation marks omitted).

There is little "caselaw concerning what constitutes a sufficient 'explanation' of supportability and consistency." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (citing *Moore v. Saul*, No. 20-cv-48, 2021 WL 754833, at *3 n.1 (S.D. Miss. Feb. 26, 2021)). But the "measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Id.* (internal citations omitted) (collecting cases); *see Price v. Comm'r of Soc. Sec.*, No. 22-cv-3504, 2023 WL 8037853, at *3 (S.D. Tex. Nov. 20, 2023) (same); *Silvas v. Kijakazi*, No. 23-cv-2, 2023 WL 8456151, at *4 (W.D. Tex. Nov. 3, 2023) (same), *R. & R. adopted sub nom. Silvas v. Comm'r of Soc. Sec.*, 2023 WL 8253739 (W.D. Tex. Nov. 29, 2023). "In other words, 'there must be a discernable 'logic bridge' between the evidence and the ALJ's persuasiveness finding.'" *Silvas*, 2023 WL 8456151, at *4 (quoting *Chavarria v. Kijakazi*, No. 22-cv-407, 2023 WL 3984857, at *3 (W.D. Tex. June 13, 2023)).

Boilerplate language divorced from the evidence in the record is generally insufficient to satisfy the ALJ's obligation. *See Bridges v. Comm'r of Soc. Sec.*, No. 20-cv-89, 2021 WL 2908671, at *2 (N.D. Miss. June 21, 2021), *R. & R. adopted*, 2021 WL 2907892 (N.D. Miss. July 9, 2021); *see also Kneeland v. Berryhill*, 850 F.3d 749, 761 (5th Cir. 2017) ("[I]t should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion."). The ALJ must instead cite "specific evidence in the record" supporting his supportability and consistency determination. *See, e.g.*, *Morgan v. Kijakazi*, No. 22-cv-631, 2023 WL 6238052, at *6 (E.D. Tex. Aug. 31, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 6221773 (E.D. Tex. Sept. 25, 2023).

**B.     Medical Opinions of Dr. Ahn and Dr. Ayoade**

In his decision, the ALJ found the opinions of Dr. Ahn unpersuasive. Tr. 157. In reaching this conclusion, the ALJ stated:

> [T]he opinions are too vague, as the statements provide no analysis of the functional limitations that lead to the conclusions. Furthermore, there is no reference to objective clinical findings or narrative treatment notes to support the opinions. In addition to the analysis above, I further find these opinions are not well supported by the remainder of the record or consistent with the record as a whole, are internally inconsistent[,] and based solely on the claimant's subjective reports, and therefore, the opinions are not persuasive (Exhibit 2F; 32F). Furthermore, the opinion of Dr. Ahn that the claimant is unable to work, is inherently neither valuable nor persuasive (Exhibit 4F). See 20 CFR 404.1520b(c)(3) and 416.920b(c)(3). In addition, the opinion fails to provide for specific functional limitations and does not reference objective findings.

Tr. 157. The ALJ also found the opinion of Dr. Ayoade unpersuasive. In a similar paragraph, the ALJ stated:

> [T]he opinion is too vague, as the statement provides no analysis of the functional limitations that lead to the conclusions. Furthermore, there is no reference to objective clinical findings or narrative treatment notes to support the opinion. In addition to the analysis above, I further find this opinion is not well supported by the remainder of the record or consistent with the record as a whole, is based on the

8

> claimant's subjective reports, and therefore, the opinion is not persuasive (Exhibit 29F).

Tr. 158. The Court has serious reservations regarding the ALJ's boilerplate evaluations of these medical opinions. *See Kneeland*, 850 F.3d at 761; *Clay v. Kijakazi*, No. 21-cv-149, 2022 WL 13989015, at *5 (N.D. Miss. Oct. 21, 2022) (concluding that a persuasiveness evaluation is "difficult to review on appeal" when the ALJ results to "boilerplate" statements that fail to "reference . . . any findings in the record"); *see also Morgan*, 2023 WL 6238052, at *6 ("Courts have found that citations to specific evidence in the record constitute an adequate articulation of the supportability and consistency factors." (collecting cases)).

More fundamentally, the ALJ failed to provide any reviewable consistency analysis. The ALJ stated that the opinions of Dr. Ahn and Dr. Ayoade were "not well supported by the remainder of the record or consistent with the record as a whole." Tr. 157–58. This conclusory statement fails to build a "logic bridge" between the evidence in the record and his findings; that is, the Court cannot identify which conclusion (or conclusions) drawn by the medical opinions are inconsistent with the rest of the medical evidence in the record. *See Bradley v. Kijakazi*, No. 22-cv-277, 2023 WL 4278793, at *3 (N.D. Miss. June 29, 2023) ("An ALJ may not simply summarize the record evidence and summarily conclude that an opinion is persuasive or unpersuasive without substantively engaging with the supportability and consistency of the opinion in any detail." (citing *Pearson v. Comm'r of Soc. Sec.*, No. 20-cv-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021))); *Probst v. Kijakazi*, No. 22-cv-286, 2023 WL 3237435, at *4 (W.D. Tex. May 3, 2023) ("The ALJ summarized some of the observations from [the doctor's] treatment records but did not explain how those observations failed to support [the doctor's] opinion. The ALJ failed to bridge the gap between the evidence and her supportability determination, and without such guidance, the Court is left to speculate why [the doctor's] records fail to support his medical opinion." (internal

9

citations omitted) (collecting cases)); *Kilby v. Kijakazi*, No. 20-cv-3035, 2022 WL 1797043, at *4 (S.D. Tex. Mar. 15, 2022) ("[T]he discussion of the 'consistency' factor is devoid of any explanation for why the statements plucked from the record support a finding that [the doctor's opinion] is inconsistent with the medical record."); *Hearn v. Kijakazi*, No. 21-cv-562, 2022 WL 4477340, at *6 (E.D. Tex. Aug. 30, 2022) (holding "boilerplate statements" preclude "meaningful judicial review, as the Court can only speculate as to why each opinion was not supported by, or was inconsistent with, the medical evidence in the record").

The Commissioner relies on the fact that the ALJ discussed "the remainder of the record . . . in great detail" during his RFC discussion. Dkt. 14 at 6. Thus, the Commissioner concludes that the ALJ's persuasiveness analysis is supported by substantial evidence. *See id.* at 10. It is true that "[t]he ALJ's discussion of the persuasiveness of a medical opinion and the consistency and supportability factors is not confined to the specific discussion of the opinion itself but is considered in light of the entire RFC discussion and the evidence discussed therein." *See, e.g.*, *Garner v. Kijakazi*, No. 22-cv-563, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) (citing *Teixeira v. Comm'r, SSA*, No. 21-cv-3, 2022 WL 3130859, at *9 n.15 (E.D. Tex. July 12, 2022), *R. & R. adopted*, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022)). However, the Commissioner's argument misses the point. Although the ALJ discussed the medical evidence "in great detail," *see* Tr. 152–157, he did not explain how that evidence conflicted with the opinions of Dr. Ahn and Dr. Ayoade. *See* Tr. 157–58. Therefore, the Court is left to speculate about the reasons underlying the ALJ's consistency analysis. *See, e.g.*, *Hearn*, 2022 WL 4477340, at *6. As the Court is unable to conduct a meaningful review, it concludes that the ALJ committed legal error.

C.  **Prejudice**[6]

"'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). Accordingly, the Court may not vacate the judgment unless the claimant shows he was prejudiced by the ALJ's error. *See Demarcus G. v. Kijakazi*, No. 20-cv-2103, 2021 WL 6297778, at *5 (N.D. Tex. Dec. 17, 2021) (citing *Mays*, 837 F.2d at 1364), *R. & R. adopted*, 2022 WL 60333 (N.D. Tex. Jan. 5, 2022). Prejudice occurs when procedural errors cast doubt on the existence of substantial evidence in support of the ALJ's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam).

The Court concludes that the ALJ's erroneous consistency analysis was not harmless error. In a recent unpublished opinion, the Fifth Circuit indicated that an ALJ's failure to sufficiently articulate the persuasiveness of a medical opinion is prejudicial only when he "would have adopted" the opinion had he given it "further explanation." *See Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023). However, in *Miller*, the ALJ clearly considered the medical opinions at issue. *See id.* ("The ALJ's error was that she did not provide sufficient explanation of her consideration of the medical opinions. . . . [H]er decision makes clear that she considered them. She acknowledged that the opinions contained more limiting restrictions, but she did not find them persuasive."). Such is not the case here.

The ALJ's boilerplate explanation of why the opinions of Dr. Ahn and Dr. Ayoade were unpersuasive casts doubt on the extent to which he actually considered them. Furthermore, in finding these opinions unpersuasive, the ALJ summarily discarded—without sufficient

---

[6] The Commissioner makes no argument regarding whether the ALJ's failure to adequately discuss the opinions of Dr. Ahn and Dr. Ayoade resulted in prejudice to Ms. Erlandsen. *See* Dkt. 14.

11

explanation—the only medical opinions supporting a finding of disability. Indeed, at the hearing, the VE concluded that if Ms. Erlandsen suffered from the limitations suggested by Dr. Ahn and Dr. Ayoade, she should be found disabled within the meaning of the Act. *See* Tr. 58–61. Thus, "[t]he legal error clearly implicates [Ms. Erlandsen's] substantive rights," and this case should be remanded for further proceedings. *Cooley*, 587 F. Supp. 3d at 501; *see also Kilby*, 2022 WL 1797043, at *5 (remanding "for the ALJ to sufficiently explain" the persuasiveness of the medical opinion because the court could "only speculate as to what conclusion the ALJ would have reached had he properly applied the supportability factor in his analysis").

## IV. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 13th day of February, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE